```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| PARK WEST RADIOLOGY and PARK WEST CIRCLE REALTY, LLC,<br><br>                              Plaintiffs,<br><br>        — against —<br><br>CARECORE NATIONAL LLC; CARECORE MANAGEMENT SERVICES, INC; NEW YORK MEDICAL IMAGING IPA, INC; NYMI IPA-O LLC; NYMI IPA-M LLC; MICHAEL M. ABIRI, M.D.; WEST SIDE RADIOLOGY ASC; JOEL CANTER, M.D.; DRA IMAGING, P.C.; AND HUDSON VALLEY RADIOLOGY, P.C.,<br><br>                              Defendants. | 06 Civ. 13516 (VM)<br><br>**DECISION AND ORDER** |

**VICTOR MARRERO, United States District Judge.**

## I.  BACKGROUND

Plaintiffs Park West Radiology and Park West Circle Realty, LLC (collectively "Park West"), moved by order to show cause on December 4, 2006 for expedited discovery and a preliminary injunction to enjoin the named defendants (collectively "Defendants") from continuing an alleged anti-competitive conspiracy against Park West and other radiology practices, as set forth in Park West's complaint.  After a hearing on December 22, 2006, the Court denied Park West's motion from the bench, which denial was confirmed by order dated January 9, 2007 (the "Order").

By notice of motion dated January 16, 2007, Park West has moved for reconsideration of the Court's Order pursuant to Local Rule 6.3.  For the reasons set forth below, Park West's

motion for reconsideration is DENIED.

## II.  STANDARD OF REVIEW

Reconsideration of a judicial order pursuant to Local Rule 6.3 is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Management Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and quotation omitted).  Pursuant to Local Rule 6.3, the moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the court overlooked and that might reasonably be expected to alter the court's decision.  See Lichtenberg v. Besicorp Group Inc., 28 Fed. Appx. 73, 74 (2d Cir. 2002); SEC v. Ashbury Capital Partners, L.P., No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (citing AT&T Corp. v. Comty. Network Servs., Inc., No. 00 Civ. 316, 2000 WL 1174992, at *1 (S.D.N.Y. Aug. 18, 2000)).  A court must narrowly construe and strictly apply Local Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent the rule from being used as a substitute for appealing a final judgment.  See Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 150 (S.D.N.Y. 1999); In re Houbigant, Inc., 914 F. Supp. 997, 1001 (S.D.N.Y. 1996).

## III.  DISCUSSION

Park West asserts that the Court erred in denying its motion for a preliminary injunction and expedited discovery because the Court's holding that Park West had not timely moved for the extraordinary relief it requested and had failed to show irreparable harm were contrary to judicial precedent and overlooked relevant facts in this case.

The allegations in Park West's complaint assert that Defendants have, in violation if antitrust laws, conspired to allocate the market for outpatient radiology services in New York City among themselves and effectively preclude other radiology practices from treating patients covered by the largest commercial health care insurers in the area (the "Commercial Insurers"). Park West asserts that defendant CareCore National, LLC and its affiliates ("CareCore"), have effectuated this conspiracy by entering into exclusive contracts with the Commercial Insurers for the management of radiology services, which contracts allow CareCore to certify radiology practices for inclusion in its network, and consequently, acceptance of health insurance reimbursement from the Commercial Insurers. Park West alleges that CareCore has impermissibly refused to certify Park West's radiology practice, as well as others, in order to protect CareCore's owner's radiology practices from competition.

A.   TIMELINESS OF PARK WEST'S MOTION

Park West's motion for a preliminary injunction arises out of Defendants' denial of Park West's "Practice Application" seeking inclusion in the CareCore network. In the summer of 2005, Park West bought its radiology practice from its then retiring owner, Miklos Weinberger ("Weinberger"). Park West was a certified CareCore provider under Weinberger, although Defendants assert that he was a provider in his individual capacity and only with respect to CareCore's Oxford contract. Park West purchased new, state of the art radiology equipment and initiated a move of the practice from 75th street to 57th street in Manhattan. On October 6, 2005, plaintiffs notified CareCore of Park West's new ownership and the impending relocation to 57th street. Six days later, on October 12, 2005, Park West signed the lease for its new space on 57th Street.

On December 12, 2005 CareCore denied Park West's "Practice Application" for lack of geographical necessity. On June 5, 2006, Park West wrote to CareCore asking that they reevaluate their decision. Park West received no further communication from CareCore, other than a September 29, 2006 email from a CareCore representative requesting confirmation that Park West was no longer in service.

Park West filed its complaint on November 28, 2006 and moved for a preliminary injunction and expedited discovery by

4

order to show cause a few days later.  In denying Park West's motion, the Court held that the time elapsed between CareCore's denial and Park West's motion did not indicate urgency sufficient to warrant injunctive relief.  Park West argues that the Court should reconsider this finding in light of (a) Park West's good faith attempts to settle the matter prior to filing suit, (b) the complexity of the economic and legal issues which had to be fleshed out before filing suit, and (c) Park West's motion not being ripe for filing earlier.  These arguments contain no new factual matters nor controlling law that the Court did not consider and that should now compel a different result.

Park West provides no satisfactory explanation for waiting close to six months to formally respond to CareCore's December 2005 application denial.  This delay, coupled with waiting close to another six months to file suit undercuts plaintiffs assertions of irreparable harm. See Tough Traveler, Ltd., v. Outbound Products, 60 F.3d 964, 969 (2d Cir. 1995) ("[T]he failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.") Park West did not adequately explain this delay in its papers or at oral arguments.  While Park West argues the delay was not unreasonable in light of its efforts to attempt to settle

the matter without litigation, Park West cites no actions on its part to indicate it was urgently and diligently attempting to settle the matter.  Park West cites no communications between the December 12, 2005 denial and the June 5, 2006 letter, and no communications between the June 5, 2006 letter and the September 29, 2006 inquiry from CareCore.  This is not a case where "ongoing efforts to settle" the dispute mitigate plaintiffs delay. See Bristol Tech., Inc. v. Microsoft Corp., 42 F. Supp. 2d 153, 162 (D. Conn. 1998) (no undue delay where parties were in negotiations to reach a new contract up until filing); Kraft Gen. Foods v. Allied Old English, 831 F. Supp. 123, 126 n. 12 (S.D.N.Y. 1993) ("Kraft should not be penalized for any delay arising out of settlement efforts.").

Park West also acknowledges that it did not retain counsel until almost four months after the June 5, 2006 letter. (See Memorandum of Law in Support of Plaintiff's Motion for Reconsideration, dated January 16, 2006 ("Reconsideration Br."), at 5.)  Thus, even if the Court were to agree with Park West that the nature of the complex legal and factual issues involved should be given some weight in assessing delay, it still remains unexplained why Park West waited so long to retain counsel. See Doe v. National Board of Podiatric Medical Examiners, No. 03-CV-4034, 2003 WL 21403698, at *3 (S.D.N.Y. June 19, 2003) ("Even if, as

6

alleged, plaintiffs moved promptly in the month of May when they decided to commence proceedings, plaintiffs still waited several months before they took any action.").

Park West also asserts that it should not be penalized for the timing of the instant motion because if it had sought injunctive relief earlier Defendants would have been more readily able to claim Park West faced no immediate harm. Park West asserts that it could not have alleged immediate harm until it was about to open for business because it was not until that point that their practice would actually be effected by the loss of referrals caused by CareCore's refusal to certify the practice.

Park West, however, chose to sign the lease for its 57th Street space on October 12, 2005, a week after sending its "Practice Application" to CareCore and before receiving any response. If CareCore approval was so critical to the viability of the Park West radiology practice, Park West could have awaited a response before moving forward with the relocation. Park West "cannot rely on its own actions to create the risk of irreparable injury which it then seeks to avoid by the issuance of a preliminary injunction." Vantico Holdings S. A. v. Apollo Mgmt., LP, 247 F. Supp. 2d 437, 454 (S.D.N.Y.); see also Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics, No. 06-CV-3931, 2006 WL 2848026, at *

3 (E.D.N.Y. Oct. 2, 2006) (plaintiff "should not be permitted to wait until its own financial ruin is imminent before seeking an expedited provisional remedy").  Park West cannot justify delaying litigation until the harm became more immediate when its own actions created the imminence of the harm now being alleged.

Thus, the Court finds no overlooked factual matters or controlling law which suggest the Court incorrectly found Park West's delay in seeking injunctive relief to be unwarranted.

B.   ADEQUACY OF MONEY DAMAGES

The Court also found that the harm alleged by Park West ultimately may be compensable by money damages, again undercutting Park West's claim of irreparable injury.  Park West asserts that the Court failed to consider that the loss of goodwill and customer referrals specifically alleged by Park West can constitute irreparable harm.

Park West's position relies heavily on <u>Tom Doherty Assoc., Inc. v. Saban Ent., Inc.</u>, 60 F.3d 27, 37-39 (2d Cir. 1995), where the Second Circuit provided guidance on when loss of business could constitute irreparable harm.  The Circuit Court stated:

> Generally, where we have found no irreparable harm, the alleged loss of goodwill was doubtful, and lost profits stemming from the inability to sell the terminated product could be compensated with money damages determined on the basis of past sales of that product and of current and expected future market conditions.  In

> contrast, where we have found irreparable harm, the very viability of the plaintiff's business, or substantial losses of sales beyond those of the terminated product, have been threatened. <u>Id.</u> at 38 (internal citations and quotations omitted).

Park West asserts that it is in danger of losing referrals of patients whose medical insurance is administered through CareCore, as well as referral of medical patients whose medical payments are covered by plans not affiliated with CareCore because referring physicians prefer to send all their patients to a single radiology practice that can treat all their patients regardless of each individual's coverage. Thus, Park West asserts that access to CareCore is essential to sustaining any business at all, and that quantifying the damage due to the loss of non-CareCore managed plans would be extremely difficult, thus warranting injunctive relief.

The Court is not convinced that the loss of goodwill is as pronounced as Park West asserts, nor are its potential damages too difficult to quantify. While the parties dispute the extent to which Park West is a new business or merely a continuation of an existing radiology practice under new management, it is undisputed that following the stock purchase from Weinberger, Park West was to be run by different doctors at a different location and with different radiology equipment. Thus, for Park West, it is not the case that the radiology practice at issue is an "ongoing business

representing many years of effort and the livelihood . . . of its owners." See Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co., 749 F.2d 124, 125-26 (2d Cir. 1984). While Park West asserts that its motivation in purchasing the practice was the goodwill and patient referrals associated with it, for Park West it was nevertheless a new business. Most significantly, the Weinberger practice was a business Park West chose to invest in and then relocate without obtaining confirmation that it would remain a CareCore certified provider.

Also, Park West's services are not so unique that any alleged damages resulting from its inability to market and sell them could not be easily quantified. In Tom Doherty, irreparable harm was found to exist where plaintiff sought an injunction requiring defendant to license to it the rights to publish children's books based on the hugely popular "Power Rangers," pursuant to an existing contract between the parties. 60 F.3d at 31. The Court found this circumstance to be a "wholly unique opportunity," the loss of which could not be quantified because if a preliminary injunction was not granted and plaintiff was denied the opportunity to publish the "Power Ranger" books, it would have "lost an opportunity to become a sufficiently well-known publisher of children's books to attract additional authors and owners of characters."

10

Id. at 38.  While Park West argues that it will lose the opportunity to become a successful radiology practice and attract patients if Defendants are not enjoined, Park West's damages are easier to quantify than the plaintiff's potential damages in Tom Doherty because radiology services, in contrast to "Power Rangers" book rights, are not a unique product.  See also Zeneca Inc. v Eli Lilly & Co., No. 99-CV-1452, 1999 WL 50941, at *39 (S.D.N.Y. July 19, 1999)("[T]here are no other drugs anywhere in the world, let alone in the United States, approved to reduce the incidence of breast cancer . . . Therefore, it would be even more difficult to quantify [plaintiff's potential lost sales. . . .").

Here, Park West's damages can be determined "on the basis of past sales of that product and of current and expected future market conditions."  Tom Doherty, 60 F.3d at 38.  The costs of radiology services in the New York City area can be quantified at trial, as can the market conditions of a successful radiology practice, including a CareCore certified practice in the New York City area.  If Park West fails by reason of CareCore's alleged antitrust activity, its investments in the business, including the costs of new equipment, are all readily ascertainable.

For these reasons, the Court finds its previous order denying plaintiffs injunctive relief and expedited discovery

11

based on an insufficient showing of irreparable harm to be consistent with controlling law and the facts of this case.

C.   PUBLIC INTEREST CONSIDERATIONS

Finally, Park West argues that the Court failed to consider the public interest in denying Park West relief. See Time Warner Cable of New York City v. Bloomberg L.P., 118 F.3d 917,929 (2d Cir. 1997) ("Whenever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief."). Generally, however, "such a rule [requiring consideration of public interests] has not been applied in suits between private parties." Register.com v. Verio, Inc., 356 F.3d 393, 424 (2d Cir. 2004). Thus, such considerations should not be sufficient to alter the Court's previous order denying the relief requested by Park West.

Moreover, the public interest does not weigh in favor of Park West to the extent it asserts. Park West argues that Defendants' practices have "precluded and threatens to preclude patients from dealing with historic and preferred radiologists . . . foreclose radiology practices from providing innovative services to patients . . . and causes patients to be unfairly burdened by having to travel to other

certified [CareCore] practices whose location is significantly less convenient." (See Reconsideration Br. at 13 n.6.)  Even if the Court were to reconsider these concerns in its evaluation of Park West's requested relief, Defendants' papers allude to equally relevant public interest concerns which must also be considered.

Defendants noted in their papers and at oral argument that CareCore operates as it does in order to create efficiencies that result in reduced heath care costs for consumers.  Balancing the competing and closely tied public interests raised by the parties -- accessible versus affordable health care services -- is no easier for this Court than it is for our nation's health insurance companies.  Under the circumstances, in light of the other shortcomings in Park West's application, the Court does not find that the public interests sufficiently weigh in favor of Park West to alter the Court's order denying Park West's request for preliminary injunction and expedited discovery.

### IV.  ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of plaintiffs Park West Radiology and Park West Circle Realty, LLC  (Docket No. 27 ) pursuant to

Local Civil Rule 6.3 for reconsideration of the Court's January 9, 2007 Order is DENIED.

**SO ORDERED.**

DATED:   New York, New York
         26 January 2007

                                    _____
                                         Victor Marrero
                                            U.S.D.J.