```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MEDICAL DIAGNOSTIC IMAGING, PLLC,   :
et. al.,                            :
                                    :
                        Plaintiffs, :
                                    :   06 Civ. 7764 (CS)(THK)
          -against-                 :
                                    :
                                    :
CARECORE NATIONAL, LLC, et. al.,    :
                                    :
                        Defendants. :
------------------------------------X
PARK WEST RADIOLOGY, P.C., et. al., :
                                    :
                        Plaintiffs, :
                                    :   06 Civ. 13516 (VM)(THK)
          -against-                 :
                                    :
                                    :
CARECORE NATIONAL, LLC, et. al.,    :   MEMORANDUM OPINION AND
                                    :             ORDER
                                    :
                        Defendants. :
------------------------------------X
```

**THEODORE H. KATZ, United States Magistrate Judge**

Presently before the Court is a request for leave to intervene in these actions by various related entities, collectively identified as "Standup-MRI," who are Plaintiffs in a proceeding in the Eastern District of New York — <u>Standup MRI of the Bronx, PC, et al. v. Carecore National, L.L.C.</u>, 08 Civ. 2954 (E.D.N.Y.). That action, like the two instant actions before this Court, asserts antitrust claims relating to the provision of outpatient medical diagnostic imaging services. Eight of the ten Defendants in these actions are named as defendants in that proceeding.

Standup-MRI seeks to intervene solely for the purpose of requesting a modification of the Second Amended Protective Order

entered in these cases, to allow its counsel, who is also counsel for the Plaintiffs in one of these actions, to use documents and deposition testimony produced in these cases in the proceeding in the Eastern District of New York. Defendants in these actions oppose the application.

For the reasons that follow, the motion to intervene is granted and the motion to modify the Protective Order is denied.

## DISCUSSION

Permissive intervention, pursuant to Rule 24(b) of the Federal Rules of Civil Procedure, is the appropriate route for a non-party to seek modification of a protective order in order to gain access to confidential documents produced in discovery in the action. See AT&T Corp. v. Sprint Corp, 407 F.3d 560, 561-62 (2d Cir. 2005); Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 293-94 (2d Cir. 1979). The Court will therefore grant the application for intervention and address the merits of the motion to modify the protective order.[1]

I. Applicable Law

The Second Circuit has recognized the "vital function of a protective order issued under Rule 26(c), Fed. R. Civ. P., which is to secure the just, speedy, and inexpensive determination of civil

---

[1] The application has not been brought by formal motion. However, all interested parties have had an opportunity to respond to the letter-application. The Court will therefore treat the application as a Rule 24 motion.

2

disputes." Martindell, 594 F.2d at 295 (internal quotation marks omitted). Protective orders facilitate the disclosure of all relevant evidence, encourage the provision of testimony that might otherwise be withheld, and facilitate the settlement of litigation. See id. at 295; SEC v. TheStreet.com, 273 F.3d 222, 229 (2d Cir. 2001). Thus, in this Circuit, there is a stringent standard that must be met in order for a third-party to secure modification of such an order.

> It is presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied. Once a court enters a protective order and the parties rely on that order, it cannot be modified absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need.

AT&T, 407 F.3d at 562 (internal quotation marks and citations omitted); accord TheStreet.com, 273 F.3d at 229; Martindell, 594 F.2d at 296; Wolters Kluwer Fin. Servs. Inc. v. Scivantage, No. 07 Civ. 2352 (HB), 2007 WL 1498114, at *6 (S.D.N.Y. May 23, 2007).

II. Application

A. Compelling Need

The Second Amended Protective Order Re: Confidential Information (hereinafter the "Protective Order") was entered into by the parties in order to maintain the confidentiality of party trade secrets, confidential and proprietary business information, as well as personal health information that is subject to heightened protection under the Health Insurance Portability and

3

Accountability Act of 1996 ("HIPPA"). (See Protective Order ¶ 1.) In addition, because of the nature of this litigation, pretrial discovery necessarily involved the production of information by non-parties, such as health insurers, investment banks, diagnostic imaging facilities, and radiology benefits managing companies. The Protective Order applies to third-party discovery and specifically restricts the disclosure of health insurer pricing information to "Attorneys Only." (Id. ¶ 18.)[2]

Plaintiffs fail to identify an extraordinary circumstance or a compelling need to justify modification of the Protective Order. The sole justifications offered are that the wholesale production of the confidential documents and testimony obtained in these actions will eliminate the need for expensive, complex, and largely duplicative discovery efforts in the Eastern District case, and will facilitate compliance with the discovery deadline in that case. (See Letter to the Court from Matthew L. Cantor, Esq., dated June 15, 2009 ("Cantor Ltr."), at 2-3.) While the Court appreciates the need for efficiency, it is hardly an extraordinary or compelling circumstance. See Maryland Casualty Co. v. W.R. Grace & Co., No. 83 Civ. 7451 (SWK)(LB), 1994 WL 419787, at *3 (S.D.N.Y. Aug. 10, 1994) ("Although fostering judicial economy and avoiding duplicative discovery are laudable goals - and perhaps

---

[2] The parties as well were free to claim either standard confidentiality protection for their documents or heightened "attorneys' eyes only" confidentiality. (See id. ¶ 3.)

would be sufficient motivation to modify a protective order in the Ninth or Tenth Circuits - they hardly amount to extraordinary circumstances or compelling need."); cf. Martindell, 594 F.2d at 296 (a protective order should not be modified "merely to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation," particularly when there are other means of securing information such as subpoenas and grand jury proceedings); TheStreet.com, 273 F.3d at 231-32 (discussing, by comparison, the weighty interest in public access to judicial documents). In any event, there is a dispute as to whether all of the confidential documents produced in this action are relevant to the Eastern District case. The DRA Defendants contend that they are not parties to the Eastern District action, they do not compete with Stand-Up MRI, and do not participate in any of the markets at issue in the Eastern District action. (See Letter to the Court from Ben Keith, Esq., dated July 2, 2009.) Therefore, DRA argues that "Stand-Up MRI is not entitled to the presumption of entitlement to any of DRA's discovery in the MDI matter," which is entitled to confidentiality protection. (Id. at 1.)

Moreover, it is not Plaintiffs who will bear most of the burden of discovery in the Eastern District action. They have issued their discovery requests via Rule 34 document requests to the defendants and Rule 45 subpoenas to third-parties. The burden

5

will thus fall on the recipients of those requests to provide responses. To the extent that they determine that documents they produced in this action are responsive and relevant, the documents are, no doubt, readily available to them. In any event, should it prove burdensome to them to reproduce the documents, they are free under the Protective Order to consent to their production by a party in this action. (See Protective Order ¶¶ 5-6.) That is a decision, however, that should remain their choice.[3]

B. Reasonable Reliance

The intervenors attempt to avoid the presumption against modification by arguing that Defendants do not have a reasonable expectation that the Protective Order will remain immutable. (See Cantor Ltr. at 3.) This contention finds support in the Second Circuit's decision in TheStreet.com, where the court observed:

> [S]ome protective orders may not merit a strong presumption against modification. For instance, protective orders that are on their face temporary or limited may not justify reliance by the parties. . . . Where a litigant or deponent could not reasonably have relied on the continuation of a protective order a court may properly permit modification of the order. In such a case, whether to lift or modify a protective order is a decision committed to the sound discretion of the trial court.

TheStreet.com, 273 F.3d at 231 (internal quotation marks and quote

---

[3] The intervenors suggest that the burden they will face in their Eastern District action will be disputes with the defendants over what discovery is relevant and must be produced. However, that is hardly a compelling reason to modify the Protective Order in this action.

omitted).

Thus, for example, in TheStreet.com, the court found that there was no basis for reliance on the protective order because the deponents had provided confidential testimony at least a month before the entry of the order. See id. at 234. Other factors that the court suggested are relevant to reasonable reliance are whether the protective order, by its terms, is temporary or limited, for example, because it is applicable solely to the pretrial stages of the litigation. See id. at 231; see also In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig., 255 F.R.D. 308, 318 (D. Conn. 2009) (citing as relevant the scope of the protective order, the language of the order itself, the level of inquiry the court undertook before granting the order, and the nature of reliance on the order).

Applying these factors, the Court concludes that Defendants and various third-parties reasonably relied upon the protections contained in the Confidentiality Order in producing their discovery. The plain language of the Protective Order makes clear that "[c]onfidential information may not be used in connection with any other litigation or proceeding, actual or contemplated, or for any other purpose whatsoever, absent agreement by the Producing Person or an order of this Court or of a Court having jurisdiction over the Producing Person." (Protective Order ¶ 8.) The parties' intent, therefore, was to preclude the dissemination of

7

confidential material outside this litigation. While, of course, that protection is subject to modification by the Court, by definition, any court order is subject to that court's modification. Such a provision does not, in this Court's view, undermine the parties' expectation that the Protective Order in these cases will not be modified to allow confidential materials they produced in this litigation to be used in other litigation, simply for the convenience of a third party.

As for the duration of the Protective Order, it explicitly provides that is "shall survive the final termination of this action," and further provides that the Court shall retain jurisdiction over the Protective Order for purposes of enforcing it. (Protective Order ¶ 14.) This supports a finding of reasonable reliance. However, the Order also provides for the parties and non-parties to apply to the Court for maintaining confidentiality protection at trial, as deemed appropriate. (See Protective Order ¶ 17.) This suggests that the parties may not have reasonably relied upon confidentiality protection indefinitely. Nevertheless, it is reasonable to assume that confidentiality protection will be sought for many of the documents used at trial. The Court has not yet been asked to rule on such applications and should not have to do so in the present context. On balance, therefore, this factor weighs in Defendants' favor.

There is a final consideration bearing on reliance that

8

supports maintaining the Protective Order in its present form. Because the claims in these cases involve the provision of, and insurance for, medical services, it was necessary to secure a large volume of information that requires strict confidentiality protection. Although it was left to the parties to designate which documents were to be treated confidentially, and the Court was not required to rule on the propriety of specific designations, there was great reluctance on the part of Defendants and a number of third-parties to produce documents that contained, for example, personal health information of patients and other individuals who were covered by insurance, as well as pricing information of various insurance companies. While, ultimately, those documents were produced as a result of this Court's rulings, it was the existence of the Protective Order that served to assuage the concerns of the producing parties. The Court will not require the wholesale production of that material for use in other litigation, where the scope, relevance, and confidentiality of the discovery have yet to be addressed.

## CONCLUSION

Because the intervenors have not demonstrated extraordinary circumstances or a compelling need for modification of the Protective Order, and Defendants and third-parties have reasonably relied upon the terms of the Protective Order, the motion to modify the Protective Order is denied.

So Ordered.

```
                              _____
                              THEODORE H. KATZ
                              UNITED STATES MAGISTRATE JUDGE
```

Dated: July 16, 2009
       New York, New York