UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PARK WEST RADIOLOGY and PARK WEST CIRCLE
REALTY, LLC,

Plaintiffs,

—— against ——

CARECORE NATIONAL LLC, et al.,

Defendants.

06 Civ. 13516 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Before the Court are eighteen motions in limine (the "Motions") submitted by plaintiffs, Park West Radiology and Park West Circle Realty, LLC (collectively, "Plaintiffs"), and defendants, CareCore National LLC, et al. (collectively, "Defendants"), in connection with the trial of this matter, scheduled to begin on November 30, 2009.

Six of the Motions were brought by Plaintiffs. A summary of Plaintiffs' requests and the Court's rulings thereon follow.

(1) Pursuant to Federal Rules of Evidence ("FRE") 402 and 403, to exclude an email chain, dated October 9, 2006, between Donovan Spamer ("Spamer") and Thomas Varvaro ("Varvaro") (the "Spamer and Varvaro Email Chain"): GRANTED

(2) Pursuant to FRE 402, 403, 501, 608, and 609, to exclude an email written by Spamer to Andrew Marcus ("Marcus") (the "Spamer and Marcus Email") and an email chain, dated November 27, 2006,(the "November 2006 Email Chain"): GRANTED in part and DENIED in part

(3) Pursuant to FRE 402 and 403, to exclude any reference to the Court's ruling on Plaintiffs' motion for a preliminary

injunction (the "Preliminary Injunction Ruling"): GRANTED

(4) Pursuant to FRE 402 and 403, to exclude references to malpractice allegations, lawsuits, and other disputes involving doctors associated with Park West Radiology, (collectively, "References to Prior Disputes"): GRANTED

(5) Pursuant to FRE 802 and 403, to exclude a letter from the New York Department of Health to Robert Shapiro of Pinnacle Health Consultants ("DOH Letter"): GRANTED

(6) Pursuant to FRE 402 and 403, to exclude documents, reference, and testimony related to allegations of fraud by nonparties: GRANTED

Twelve of the Motions were brought by the Defendants.  A summary of Defendants' requests and the Court's rulings thereon follow.

(1) Pursuant to FRE 702 and Federal Rule of Civil Procedure 26 ("FRCP 26"), to exclude certain reports and testimony of Plaintiffs' economic expert Robert Maness ("Maness"): DENIED

(2) Pursuant to FRE 402 and FRCP 26, to exclude certain testimony of Plaintiffs' witness Robert Powell ("Powell"): GRANTED in part and DENIED in part

(3) Pursuant to FRE 408 and 802, to exclude the amended verified complaint in the litigation entitled CareCore National, LLC v. New York State Association of Medical Imaging Providers (the "NYSAMIP Complaint"): GRANTED

(4) Pursuant to FRE 402, 403, 801, and 802, exclude Plaintiffs' trial exhibit PX259, the Lenox Hill Radiology and

2

Medical Imaging Associates, P.C. v. New York Medical Imaging, IPA, Inc. arbitration decision (the "Arbitration Decision"): GRANTED

(5) Pursuant to FRE 403 and 802, exclude any documents or references to other litigations brought against CareCore National, LLC ("CareCore"): GRANTED

(6) Pursuant to FRE 403 and 802, exclude a document entitled Business Plan Support Documentation prepared for East River Medical Imaging PC (the "ERMI Business Plan Document"): GRANTED

(7) Pursuant to FRE 402, 403, 801, and 802, to exclude Plaintiffs' trial exhibit PX39, an application for an order in bankruptcy court (the "Bankruptcy Filing"), filed on behalf of Manhattan Imaging Associates, P.C. ("Manhattan Imaging"): GRANTED

(8) Pursuant to FRE 402, 403, 801, and 802, to exclude any documents or testimony specific to Dutchess County, including Plaintiffs' trial exhibits PX215, 216, 217, 256, 323, and 324: DENIED

(9) Pursuant to FRE 701 and 802, to exclude a chain of emails between doctors at East River Medical Imaging PC ("ERMI Doctor Emails"): DENIED

(10) Pursuant to FRE 802 and 403, to exclude a document entitled Response to Key Diligence Items Requested By Goldman Sachs ("Diligence Response to Goldman Sachs"): DENIED

(11) To exclude any evidence alleging that Defendants

3

spoliated evidence: GRANTED

(12) Pursuant to 401, 402, 702, 703 and 801, to exclude the testimony of certain of Plaintiffs' witnesses: DENIED

## I. SPAMER AND VARVARO EMAIL CHAIN

FRE 402 states that relevant evidence is generally admissible, and FRE 403 states that evidence that is relevant may nonetheless be excluded if its probative value is substantially outweighed by, among other considerations, the danger of unfair prejudice, confusion of the issues, or misleading the jury. Plaintiffs assert that the email chain between Spamer, a shareholder in Park West Circle Realty, LLC, and Varvaro, Plaintiffs' accountant, regarding the need for Dr. Mona Darwish ("Darwish") to sign a non-compete agreement, is irrelevant to the issues raised in this litigation and should be excluded pursuant to FRE 402. Plaintiffs further assert that even if the Spamer and Varvaro Email Chain was relevant, it should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice pursuant to FRE 403.

Defendants counter that because Darwish will be called by Plaintiffs as a witness, the evidence is relevant to Darwish's credibility. FRE 608 states that the credibility of a witness may be attacked by evidence regarding character for truthfulness or untruthfulness. Defendants assert that Spamer's email statement, "I do not trust her," (Declaration of Sacha Boegem in Support of Memorandum of Law to Exclude Email from Donovan Spamer to Thomas Varvaro, dated November 3, 2009, Ex. A.), in reference to the importance of getting Darwish to sign a non-compete agreement, is

directly related to Darwish's reputation for truthfulness and thus should not be excluded pursuant to FRE 608. Defendants further assert that the Spamer and Varvaro Email Chain is relevant to CareCore's defense of this action. Defendants assert that Plaintiffs' insistence on non-compete agreements is relevant to the claims underlying this antitrust action, and that the email chain is relevant because it demonstrates a close relationship among Plaintiffs, Lenox Hill Radiology ("LHR") and New York Private Medical Imaging.

The Court is not persuaded that the Spamer and Varvaro Email Chain is relevant to the claims at issue in this case. Contractual issues involving Darwish have no bearing on whether or not Defendants are liable in this case. Nor is the Court persuaded that the Spamer and Varvaro Email Chain, based solely on Spamer's one statement expressing lack of trust in Darwish, constitutes sufficient evidence regarding Darwish's character or reputation for truthfulness or untruthfulness. Accordingly, the Plaintiffs' motion is GRANTED.

## II.  NOVEMBER 2006 EMAIL CHAIN

Plaintiffs move pursuant to FRE 402, 403, 608, and 609, to exclude the Spamer and Marcus Email. The email reads in part, "I was hoping that her friends would want to have sex with [sic] me after they saw the ring." (Declaration of Sacha Boegem in Support of Park West's Motion to Exclude the Email from Donovan Spamer to Andrew Marcus, dated November 3, 2009, Ex. A.) Plaintiffs also move

5

to exclude the remainder of the November 2006 Email Chain because it contains attorney-client privileged communications.

Plaintiffs first argue that the Spamer and Marcus Email is irrelevant to this litigation and that even if it was relevant, its probative value is substantially outweighed by the risk of unfair prejudice.  Defendants argue that the Spamer and Marcus Email is relevant to the testimony of one of Plaintiffs' trial witnesses, Dr. Craig Antell ("Antell").  Defendants assert that the email shows Antell's bias in favor of Plaintiffs, specifically his relationship to his medical group, on the one hand, and Park West Radiology, on the other.  Evidence of "bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." United States v. Abel, 469 U.S. 45, 52 (1984).  The relationship between Antell and his group and Plaintiffs is relevant to whether Antell is a biased witness.  The Spamer and Marcus Email, however, is only nominally probative of bias and Defendants may use other evidence (including the remainder of the November 2006 Email Chain) to show bias. Further, the Spamer and Marcus Email could elicit a strong negative reaction from the jury for reasons not at all relevant to this litigation.  The Court finds that the relevancy of the Spamer and Marcus Email to bias

is substantially outweighed by the risk of unfair prejudice. Accordingly, Plaintiffs' motion to exclude the Spamer and Marcus

Email is GRANTED and the email should be redacted to reflect this ruling.

Lastly, Plaintiffs argue that the November 2006 Email Chain -- other than the Spamer and Marcus Email discussed above -- is privileged and therefore inadmissible under FRE 501.  Defendants argue that the November 2006 Email Chain does not contain any attorney-client privileged communications and is relevant to show bias.  But the Court finds that the November 2006 Email Chain does not contain attorney-client advice.  The November 2006 Email Chain contains only an email forwarding a document for signature from an attorney, followed by a mix of (1) strictly ministerial communications relating to the signature and delivery of a declaration and (2) social communications. Accordingly, Plaintiffs' motion to exclude the remainder of the November 2006 Email Chain as privileged is DENIED.

### III.  PRELIMINARY INJUNCTION RULING

Plaintiffs move to exclude any references to the Court's Preliminary Injunction Ruling as irrelevant and prejudicial pursuant to FRE 402 and 403.  Defendants seek to introduce evidence related to the Preliminary Injunction Ruling, but not the ruling itself, to support a standing defense.  Defendants argue that because Plaintiffs requested injunctive relief that would preclude CareCore from denying Plaintiffs access to reimbursement from commercial payors that contract with CareCore, they essentially "were seeking to join CareCore, the very organization that [Plaintiffs] allege is an illegal cartel." (Memorandum of Law in Opposition to Plaintiffs'

7

Motion in Limine to Preclude Preliminary Injunction Ruling, dated November 10, 2009, at 1-2.)  The Court agrees with Plaintiffs and finds that even if Defendants show that the Preliminary Injunction Ruling is relevant, any references to the Court's Preliminary Injunction Ruling are likely to unduly influence the jury. Considering the risk of undue influence on the jury pursuant to FRE 403, references to the making of the motion, as opposed to the Preliminary Injunction Ruling itself, will also not be permitted without prior ruling by the Court sought at sidebar or in the jury's absence.  Accordingly, Plaintiffs' motion is GRANTED.

### IV. REFERENCES TO PRIOR DISPUTES

Plaintiffs move pursuant to FRE 402 and FRE 403, to exclude the References to Prior Disputes because they are (1) irrelevant and (2) to the extent that they are relevant, their probative value is substantially outweighed by unfair prejudice, the likelihood that their presentation will lead to jury confusion on the relevant issues, and that the review of such evidence would be a waste of time.

Defendants counter that the References to Prior Disputes are relevant and that their probative value outweighs any possible unfair prejudice, jury confusion on the relevant issues, or waste of time.  Defendants assert that the References to Prior Disputes are relevant to damages because the evidence goes to the issue of whether Plaintiffs' knowledge of Defendants' business shows that Plaintiffs' injuries were self-inflicted and unmitigated. Defendants also assert that the References to Prior Disputes (when

coupled with CareCore's failure to dissuade health plans from continuing to do business with it) are relevant in that they undermine Plaintiffs' assertion that CareCore has control over the networks that it manages.

Any probative value of the References to Prior Disputes is substantially outweighed by the likelihood of unfair prejudice, confusion of the issues, misleading the jury, and waste of time. Accordingly, Plaintiffs' motion to exclude the References to Prior Disputes is GRANTED.

## V.  DOH LETTER

Plaintiffs move to prevent Defendants from introducing the DOH Letter to Robert Shapiro ("Shapiro").  Shapiro had complained to the New York State Department of Health ("DOH") that women were unable to timely access mammography services in New York City. The letter response from DOH, the subject of Plaintiffs' motion, indicates that no backlogs existed.  Plaintiffs argue this response is inadmissible hearsay, and further argue that the response is not admissible under the government agency report exception to the hearsay rule, Fed. R. Evid. 803(8), because it is unreliable as its investigative methods are not explained.  Plaintiffs also argue the response is unfairly prejudicial to the Plaintiffs because the jury will give undue weight to DOH's conclusions, and thus should be excluded under FRE 403. The response is also not relevant, Plaintiffs suggest, because the letter addresses the backlog situation only as it existed in 2009 and this lawsuit concerns an earlier period.

Defendants contend that the DOH Letter is admissible as a government report because DOH made its own independent investigation into the complaint and was authorized to do so by law.  Defendants further argue that admitting the response letter is actually the most efficient way for Defendants to show they were compliant with DOH regulations and that the response is probative of Plaintiffs' lack of damages in this case.

The Court concludes that while the letter may not be admissible as a report of a government investigation, it must be excluded under FRE 403.  See Paolitto v. Brown, 151 F.3d 60, 64-65 (2d Cir. 1998) (admissibility of state-agency findings is left "to the sound discretion of the district court.")  Defendants will have ample opportunity at trial to present other evidence to the jury on the question of whether backlogs existed.  Admitting the response letter from DOH would therefore add unnecessary evidence that would only lengthen the trial.  Further, the letter is of limited probative value given that it covers a time period outside of the scope of the lawsuit.  Plaintiffs' motion to preclude the letter is GRANTED.

## VI.   ALLEGATIONS OF FRAUD BY NONPARTIES

Plaintiffs move to preclude Defendants from introducing any documents, references, and testimony related to allegations of fraud or other unlawful or unethical conduct by nonparties LHR and New York Private Medical Imaging ("NYPMI") as irrelevant and prejudicial pursuant to FRE 402 and 403.  Defendants disagree, arguing that alleged unlawful and unethical conduct by NYPMI and LHR is relevant

10

to prove damages, to undermining Plaintiffs' allegation that CareCore has control over the networks it manages, and to show that Plaintiffs' emphasis on patient health care is disingenuous.

Defendants argue broadly that the relationships among LHR, Park West, and NYPMI are relevant to the above issues, but Defendants fail to persuade the Court that the fraud allegations in particular are "incidental" to the corporate relationships and relevant to the jury's determination of the facts in dispute. See Fed. R. Evid. 401. To the extent that such evidence may be relevant, the Court will not preclude Defendants from introducing evidence of corporate structure and relationships. However, the Court agrees with Plaintiffs, and reiterates observations made at the discovery stage. The inclusion of the nonparty fraud allegations here pose the risk of turning the trial into a "multi-ringed sideshow of mini-trials on collateral issues pertaining to the conduct and relationships of third parties that may have only tangential bearing, if at all, to the issues and claims disputed in this case." Park West Radiology et al. v. CareCore Nat'l LLC et al., 547 F. Supp. 2d 320, 322 (S.D.N.Y. 2008). The Court finds that any probative value of this evidence is substantially outweighed by the possible confusion of the issues. See Fed. R. Evid. 403. Accordingly, Plaintiffs' motion to exclude references to fraud allegations and other unlawful conduct by nonparties is GRANTED.

## VII.   DEFENDANTS'S MOTION TO EXCLUDE THE REPORTS AND   PROPOSED EXPERT TESTIMONY OF ROBERT MANESS

Defendants move to exclude reports and proposed expert testimony of Maness. Defendants allege that (1) Maness's reports failed to comply with FCRP 26, and (2) Maness's reports and proposed testimony fail to meet the standards of FRE 702.

A.   Maness's Expert Reports

FRCP 26 requires that opposing parties receive notice of expert testimony in a report containing, among other things, "a complete statement of all opinions to be expressed and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). Parties disclosing expert testimony intended to "contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B)" must do so within 30 days of the other party's disclosure unless otherwise directed by court order. Fed. R. Civ. P. 26(a)(2)(C)(ii). A party who has made a disclosure under Rule 26(a) must supplement or correct its disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(5)(e)(1).

Defendants contend that Maness's second and third expert reports contain new assertions and analysis in violation of FRCP 26(a)(2)(B). Plaintiffs counter by asserting that, under FRCP 26, the second report was a permissible rebuttal and the third report was a permissible supplemental disclosure. The Court agrees with Plaintiffs. As found by Magistrate Judge Katz in a hearing on this issue, new methodologies used by Maness in his second report were for the purpose of rebutting or critiquing the opinions of

-12-

Defendants' expert witness, Barry Harris ("Harris").   (See Declaration of Sacha A. Boegem In Opposition to Defendants' Motion to Exclude the Expert Report of Robert Maness, dated November 10, 2009 ("Boegem Decl."), Ex. H at 3-6, 13.)   Further, Defendants were not prejudiced by the report's timing.   The second report was submitted in accordance with the discovery schedule set by Magistrate Judge Katz and Defendants had the opportunity to redepose Maness and to submit a surrebuttal report.   Lastly, Maness's third report, which updated the share and damages calculations of his previous reports with newly available information, complies with subsection (5)(e)(1) of FRCP 26 on supplemental disclosure. Accordingly, Defendants motion to exclude Maness's second and third expert reports is DENIED.


B.   <u>Maness's Expert Testimony</u>

FRE 702 governs the admissibility of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.   A trial court must decide whether a qualified expert's testimony rests on a reliable foundation, or is simply based on "subjective belief or unsupported speculation." <u>Daubert v. Merrell Dow Pharms.</u>, 509 U.S. 579, 590 (1993).   The testimony

must "assist the trier of fact to understand the evidence or determine a fact in issue." Id. at 591 (quoting Fed. R. Evid. 702).

The crux of Defendants' motion to exclude Maness's expert testimony is that his methodology is flawed and yields unreliable conclusions. Yet the Court's inquiry under Daubert must focus "not on the substance of the expert's conclusions, but on whether those conclusions were generated by a reliable methodology." Trouble v. Wet Seal, Inc., 179 F. Supp. 2d 291, 301 (S.D.N.Y. 2001). To the extent the Defendants have any questions about the weight or the sufficiency of the evidence upon which Maness relied, or the conclusions generated therefrom, those questions can be asked on cross-examination. See Discover Fin. Servs. v. Visa U.S.A., Inc., 582 F. Supp. 2d 501, 507 (S.D.N.Y. 2008).

The Court will thus limit its review of the motion at hand to the reliability of Maness's methodology. In Daubert, the Supreme Court set out a list of nonexclusive factors that a trial court may consider in determining whether an expert's reasoning or methodology is reliable: (1) whether the theory or technique upon which the expert relies has been tested -- that is, whether the expert's technique can be challenged in some objective sense, or whether it is simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the theory or technique has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards controlling the

-14-

technique's operation; and (5) whether the theory or method has been generally accepted by the expert community. See Daubert, 509 U.S. at 593-94.

The test of reliability, however, is a "flexible" one, and the factors set forth in Daubert do not constitute a definitive checklist or test. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999). Whether the Daubert factors are pertinent to assessing reliability in a particular case depends on "the nature of the issue, the expert's particular expertise, and the subject of his testimony," and "a trial court should consider the specific factors identified in Daubert where they are reasonable measures of the reliability of expert testimony." Kumho Tire, 526 U.S. at 150. In short, "the gatekeeping inquiry must be 'tied to the facts' of a particular case," id. (quoting Daubert, 509 U.S. at 591), and "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Id. at 152. No single factor is necessarily dispositive of the reliability of a particular expert's testimony and a "review of the case law after Daubert shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note 2000.

The Court is persuaded that Maness's opinions are based on more than subjective beliefs or unsupported speculation. Many of Defendants' objections revolve around allegations that Maness employed flawed methodologies in opining on the market relevant to Plaintiffs' claims, as well as Defendants' market power.

Specifically, Defendants allege that Maness's opinions are unreliable insofar as they are based on qualitative evidence adduced during the litigation, and not based on empirical analyses or quantitative findings. But the Court is not persuaded that Maness's use of qualitative evidence undermines the reliability of his methodology or his ability to assist the trier of fact to understand the case. See In re Zyprexa Prods. Liab. Litig., 489 F. Supp. 2d 230, 283 (E.D.N.Y. 2007) (admitting expert and holding that "[f]reely admitted is expert testimony that is likely to substantially assist the average person in understanding the case – even if it simply explains facts and evidence already in the record.").

The Court also finds that Maness's market power analysis is based on an approach that has been subject to peer review and publication. (See, e.g., Boegem Decl., Ex. AA at 11.) Further, Maness's reliance on the 1992 Horizontal Merger Guidelines (the "Merger Guidelines"), jointly issued by the Department of Justice and the Federal Trade Commission, buttress a preliminary finding of reliability. See United States Dep't of Justice & Federal Trade Comm'n, Horizontal Merger Guidelines, 57 Fed. Reg. 41,552 (Sept. 10, 1992). The Merger Guidelines have been recognized by this Court in antitrust cases as "a tool used to define a relevant market," Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP, 612 F. Supp. 2d 330, 352 (S.D.N.Y. 2009), and to assess market power, New York v. Kraft General Foods, Inc., 926 F.Supp. 321, 361 (S.D.N.Y. 1995). Accordingly, the Court finds that Maness's methodology is

-16-

sufficiently reliable to be admitted at this stage, and Defendants motion to exclude his testimony is DENIED.

If in the course of examination at trial Defendants believe that specific testimony offered by Maness is unreliable or unsubstantiated, they retain the right to renew their objections at that time.

VIII.   **DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CERTAIN OPINION TESTIMONY OF PLAINTIFFS' EXPERT ROBERT POWELL**

Defendants assert that certain testimony of Plaintiffs' expert, Powell, should be excluded pursuant to FRE 702 and FRCP 26. Defendants assert that Powell is (1) not qualified to opine on physicians' referring patterns in New York County, and (2) lacks sufficient knowledge to opine as an expert on reimbursement in New York County.

As described above, under Daubert a district court is required to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. The Supreme Court's decision in Kumho Tire makes clear that this "gate-keeping function applies not just to scientific expert testimony as discussed in Daubert, but also to testimony based on technical and other specialized knowledge ...." MTX Commc'ns Corp. V. LDDS/WorldCom, Inc., 132 F. Supp. 2d 289, 290-91 (S.D.N.Y. 2001) (citing Brooks v. Outboard Marine Corp., 234 F.3d 89, 91 (2d Cir. 2000)). "To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the

-17-

proffered testimony." United States v. Tin Yat Chin, 371 F.3d 31, 40 (2d Cir. 2004). "When an expert opinion is based on data, a methodology or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." Amorgianos v. National R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002).

A.   Powell's Opinions on Physician Referral Patterns

In his August 29, 2008 report, Powell opined on several issues relating to physician referral patterns. For example, Powell wrote, "Rarely will a referring doctor keep a list of multiple [outpatient diagnostic imaging facilities ("ODIFs")] to which to send patients. It is much simpler for a referring doctor to have one or two ODIFS, just like laboratories and pharmacies, to which they refer all their patients." (Declaration of Sacha A. Boegem In Opposition to Motion to Exclude Testimony of Robert Powell, dated November 10, 2009 ("Boegem Powell Decl."), Ex. B at 14.) Defendants contend that the data and methodology Powell used to reach his conclusions are inadequate. The Court agrees. Reviewing Powell's report, it is hard to determine what methodology or data, if any, Powell uses to form his conclusions on physician referral patterns. Further, nothing in Powell's stated qualifications and experience provide him with an adequate basis for opining as an expert on physician referral decisions. The Court thus finds that Powell's proffered testimony on physician referral patterns is not sufficiently reliable to be admissible. Defendants' motion as to Powell's opinions on physician referral patterns is GRANTED.

-18-

B.    Powell's Opinions On Reimbursement

In his report, Powell also opined on how ODIFs generate revenue.  Powell wrote, "to earn a sufficient revenue, particularly revenue to cover their high fixed costs, ODIFs need to participate as in-network providers for most if not all health plans, especially those that cover a large amount of lives that work or reside near the ODIF." (Boegem Powell Decl., Ex. A at 15.)  Defendants contend that Powell lacks sufficient knowledge to opine as an expert on ODIF reimbursement in New York County.  Plaintiffs contend that Powell is qualified based on extensive experience advising ODIFs on financial matters.  The Court agrees.  The Court finds that Powell is qualified to  provide expert testimony on how ODIFs generate revenue, including how ODIFs are reimbursed.  Powell's conclusions are based on sufficient data and experience gleaned from working as a consultant to ODIFs on financial matters for many years.  To the extent Defendants believe Powell's conclusions are not applicable to New York County or the issues raised in this case, they will be able to raise these arguments on cross-examination.

## IX. THE NYSAMIP Complaint

Defendants seek to exclude the NYSAMIP Complaint based on relevancy pursuant to FRE 402 and hearsay pursuant to FRE 802. Plaintiffs do not oppose the exclusion of the NYSAMIP Complaint and acknowledge that the introduction of the NYSAMIP Complaint could cause confusion to the jury.  Plaintiffs also acknowledge that they have moved by separate motion in limine to exclude references to prior litigations.  The Court is persuaded that the NYSAMIP is not

relevant to the current action and that it contains inadmissible hearsay.  Accordingly, Defendants' motion to exclude the NYSAMIP Complaint pursuant to FRE 402 and 802 is GRANTED.

The Court's ruling on the use of evidence of prior litigation between the parties moots (1) Defendants' further argument that they should be allowed to reference the NYSAMIP Complaint to the extent its existence becomes relevant to showing acrimony between the parties in response to Plaintiffs' case-in-chief, and (2) Plaintiffs further argument that if the Court allows Defendants to introduce evidence of the existence of the NYSAMIP Complaint, that Plaintiffs should then be able to introduce the NYSAMIP Complaint in rebuttal.

## X.   ARBITRATION DECISION

The Arbitration Decision reflects the conclusion of an arbitration brought by LHR against CareCore's predecessor, NYMI. Defendants argue that the Arbitration Decision constitutes inadmissible hearsay pursuant to FRE 801 and 802, and additionally, that the Arbitration Decision should be excluded because it is irrelevant and prejudicial pursuant to FRE 402 and 403.  Defendants also seek to reserve the right to introduce the existence of the arbitration to show the history of acrimony between the parties. In response, Plaintiffs contend that the Court should permit the introduction of the Arbitration Decision to show the basis for the arbitration, that it had merit, and that the arbitrator found for LHR on
several issues relevant to this matter.

The Court agrees with Defendants that the Arbitration Decision

should be excluded as hearsay.  Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).  The arbitrator will not be testifying at trial and Plaintiffs do not seek to use the Arbitration Decision for any purpose other than to prove the substance and outcome of the arbitration, in other words, for the truth of the matter asserted. Nor is the Arbitration Decision subject to admission as nonhearsay through an exception.  Further, as this Court held in <u>Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.</u>, the Arbitration Decision should be excluded because of its prejudicial effect, pursuant to FRE 403.  <u>See</u> 257 F. Supp. 2d 768, 773-74 (S.D.N.Y. 2003).  The Arbitration Decision, if introduced, "could encourage the jury to make a decision on how much blame to assign to Defendants based on the arbitration panel's findings, not on the jury's own deliberations."  <u>Id.</u>

If at trial, Defendants introduce evidence relating to the existence of the arbitration that the Court finds could create a false impression, Plaintiffs will be allowed to introduce the Arbitration Decision as a rebuttal to correct the impression.  If that situation arises, the Court will permit the introduction of the Arbitration Decision not for
its truth but for the limited purpose of rebuttal, and the jury will be instructed as such.  <u>See</u> <u>United States v. Al-Moayad</u>, 545 F.3d 139, 169 (2d Cir. 2008).  Accordingly, Defendants' motion to exclude the Arbitration Decision is GRANTED.

-21-

## XI.  OTHER LITIGATIONS BROUGHT AGAINST CARECORE

Defendants move to exclude any evidence concerning the following litigations brought against CareCore: <u>New York MedScan v. CareCore</u>, 05 Civ. 4653 (S.D.N.Y.); <u>Alpha Imaging v. CareCore</u>, 06 Civ. 13175-GBD-THK (S.D.N.Y.); <u>Medical Diagnostic Imaging v. CareCore</u>, 06 Civ. 7764-CS-THK (S.D.N.Y.); <u>Omega Diagnostic Imaging v. CareCore</u>, 09 Civ. 01061-LDW-ETB (E.D.N.Y.); <u>Allen Rothpearl, M.D., P.C. v. CareCore</u>, No. 08 Civ. 01917-LDW-ETB (E.D.N.Y); and <u>Stand-Up MRI v. CareCore</u>, 08 Civ. 02954-LDW-ETB (E.D.N.Y.) (collectively, the "Other Litigations").  Defendants argue that the pleadings from the Other Litigations constitute inadmissible hearsay under FRE 802 and that any probative value of the evidence of the Other Litigations is substantially outweighed by the risk of unfair prejudice to CareCore under FRE 403.  Plaintiffs, having themselves moved in limine to exclude certain evidence relating to other litigations, do not object to the exclusion of the evidence of the Other Litigations.  The Court is persuaded that the pleadings in the Other Litigations constitute inadmissible hearsay under FRE 803 and that any probative value of references to the Other Litigations is substantially outweighed by the risk of unfair prejudice, confusion of the issues, misleading the jury, and waste of time under FRE 403.  Accordingly, Defendants' motion to exclude evidence of the Other Litigations is GRANTED.

## XII.  ERMI BUSINESS PLAN DOCUMENT

Defendants seek to preclude Plaintiffs from offering into evidence the ERMI Business Plan Document.  The document, which was

created by nonparty East River Medical Imaging Center PC ("ERMI"), indicates that one of ERMI's facilities had a scheduling backlog. Defendants argue that the ERMI Business Plan Document is inadmissible hearsay and not admissible under the business records exception to the hearsay rule, FRE 803(6), because Plaintiffs have not yet made efforts to show that the document was kept in the regular course of business. Defendants also seek exclusion because the document has not been properly authenticated and because evidence of such a waiting period contradicts its theory of the case and would therefore be unfairly prejudicial under FRE 403.

Plaintiffs argue that the ERMI Business Plan Document is evidence of the declarant's future intent and thus not hearsay under FRE 803(3) because it shows ERMI's intent to open a new facility. Plaintiffs further argue that the ERMI Business Plan Document is directly probative of its claim that Defendants were preventing patients from receiving timely radiology treatment.

The Court holds that the ERMI Business Plan Document is hearsay and not admissible under the business records exception to the hearsay rule because it is a unique document not kept in the regular course of business.  Though some of the statements in the document may properly be categorized as nonhearsay statements of future intent, the portions of the document cataloguing waiting periods are descriptions of past or current events and remain hearsay.  The remainder of the document is not relevant because it describes the intended business plans of a nonparty.  Defendants' motion to exclude the ERMI Business Plan Document is GRANTED.

-23-

### XIII.  BANKRUPTCY FILING

Defendants move to exclude the Bankruptcy Filing, which includes statements that Manhattan Imaging's "core value is derived in large measure from its interest and participation in CareCore"; "the lion's share of [Manhattan Imaging's] patient referral base is directly tied to its participation in CareCore"; and "[t]he termination of the CareCore relationship would altogether undermine [Manhattan Imaging's] referral base, business model and value." (Declaration of Sacha A. Boegem in Opposition to Defendants' Motion in Limine to Exclude the Live Testimony of Bankruptcy Attorney Robert R. Leinwand and Plaintiffs' Trial Exhibit 39, dated November 10, 2009, Ex. A.)  Defendants argue that the statements contained in the Bankruptcy Filing are irrelevant and unfairly prejudicial pursuant to FRE 402 and 403.  Defendants also assert that the Bankruptcy Filing, prepared by attorney Robert R. Leinwand ("Leinwand") and based on out of court statements made by his clients, constitutes inadmissible double hearsay pursuant to FRE 801 and 802.

Plaintiffs argue that the Bankruptcy Filing contains highly probative evidence that is not unfairly prejudicial to Defendants.  Plaintiffs also claim that the Bankruptcy Filing is admissible hearsay pursuant to the business record exception and the residual exception, FRE 807.

The business records exception does not apply here.  To be admitted under the business record exception, the record must be made "in the course of regularly conducted business activity." Fed.

-24-

R. Evid. 803(6).  The Court finds that the Bankruptcy Filing was not made or kept in the course of Manhattan Imaging's regularly conducted business activity, but rather was made by bankruptcy attorneys recollecting prior events.

Plaintiffs have also failed to establish that the Bankruptcy Filing meets the requirements of admissibility under FRE 807.  The residual exception permits a court to admit hearsay where it has circumstantial guarantees of trustworthiness and:

> the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (c) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed R. Evid. 807.  "Congress intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances."  Parsons v. Honeywell, Inc., 929 F.2d 901, 907-08 (2d Cir. 1991) (citations and internal quotation marks omitted). Even though the Bankruptcy Filing was prepared and certified by an officer of the Court, the attorney responsible was acting as an advocate for his client.  As such, the Court finds that the Bankruptcy Filing does not possess any guarantees of trustworthiness and cannot be admitted under the residual exception.

In the alternative, Plaintiffs argue that the Bankruptcy Filing is admissible as nonhearsay if it is not offered for the truth of the matter, but to show Manhattan Imaging's belief about its business and relationship with CareCore.  In other words, Plaintiffs maintain that the Court should permit the evidence to

show that Manhattan Imaging believed its core value was derived from its relationship with CareCore.  At this time, the Court finds that Plaintiffs have not sufficiently distinguished the nonhearsay and hearsay uses of the Bankruptcy Filing.  Whether offered to show Manhattan Imaging's belief about CareCore or for its truth, Plaintiffs seek to admit the statements for the same purpose, to prove that CareCore's business had significant market power and market-wide anticompetitive effects.  Plaintiffs contend that the jury will find Manhattan Imaging's belief about CareCore to be probative of CareCore's market power, essentially accepting the statements contained in the Bankruptcy Filing as true.  Accordingly, Defendants' motion is GRANTED.

## XIV.  EVIDENCE SPECIFIC TO DUTCHESS COUNTY

Defendants argue that the evidence specific to Dutchess County, including emails between CareCore and Diagnostic Radiology Associates ("DRA"), a Dutchess County imaging facility and a member of CareCore, should be excluded as hearsay pursuant to FRE 802 and 803.  Defendants also argue that because the evidence deals with the Dutchess County market and not Manhattan the evidence should be excluded as irrelevant to the instant action pursuant to FRE 402.  Finally, Defendants argue that the evidence should be excluded pursuant to FRE 403 because of the likelihood of confusing the jury and prejudicing the defendants.

Plaintiffs disagree, arguing that the emails, which pertain to in-network provider exclusivity, are relevant to show the existence of the CareCore group boycott and market allocation scheme alleged

-26-

by Plaintiffs. Plaintiffs additionally offer that the emails are admissible as (1) admissions by CareCore; (2) verbal acts; (3) admissions by co-conspirators in furtherance of the conspiracy; and (4) business records.

The Court agrees with Plaintiffs that the emails are admissible to the extent that they are admissions by CareCore from its president and chief operating officer.   A statement offered against a party is not hearsay when "it is the party's own statement, either in individual or representative capacity." Fed. R. Evid. 802(d)(2)(A).

The Court also finds that the remainder of the emails may be conditionally admitted as admissions by co-conspirators in furtherance of the conspiracy. See Fed. R. Evid. 802(d)(2)(E).   In order for Plaintiffs to establish that the Dutchess County materials fall within the co-conspirator exclusion, Plaintiffs must show that (1) there was a conspiracy; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; and (3) the statements were made in furtherance of the conspiracy. See Boujaily v. United States, 438 U.S. 171, 175 (1987).   The prerequisites for admissibility are considered a preliminary question under FRE 104(a), and are therefore resolved by the Court, not the jury. See id.  Though the Court may consider the content of the statement itself, see id. at 178, "for such statements to be admissible, there must be some independent corroborating evidence of the defendant's participation in the conspiracy." United States v. Tellier, 83 F. 3d 578, 580 (2d Cir. 1996).

Here, Plaintiffs have yet to prove by a preponderance of the evidence a conspiracy or agreement by which Carecore and DRA were "knowingly d[oing] an act which the law forbids, purposely intending to violate [antitrust] law." New York v. Anheuser-Busch, Inc., 811 F. Supp. 848, 868 (E.D.N.Y. 1993) (citing United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1196 (2d Cir. 1989)).  Accordingly, the Court will admit the co-conspirator statements subject to the later satisfaction of FRE 802(d)(2)(E).  See United States v. Geaney, 417 F.2d 1116, (2d Cir. 1969) ("While the practicalities of a conspiracy trial may require that hearsay be admitted 'subject to connection,' the judge must determine, when all the evidence is in, whether ... the prosecution has proved participation in the conspiracy ...."); United States v. Saneaux et al., 365 F. Supp. 2d 488, 491-93 (S.D.N.Y. 2005) (collecting cases to demonstrate that "courts in this circuit continue to adhere to the Geaney protocol").  Whether or not Plaintiffs may submit the Dutchess County material as verbal acts consisting of a conspiratorial agreement similarly depends upon whether the Court determines Plaintiffs have established a conspiracy by a preponderance of the evidence. See New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1075 (2d Cir. 1988).

The business records exception to the hearsay rule does not apply to the Dutchess County evidence.  For a business record to be admissible for its truth, it must be "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum."  Fed.

R. Evid. 803(6).  The CareCore and DRA employees were not under an obligation to create the emails as a record of regularly conducted business activity.  Though an  email may satisfy the business records exception under appropriate circumstances, Plaintiffs do not show that the Dutchess County emails qualify.

The Court also finds that in the event that Plaintiffs satisfy the conditions of FRE 802(d)(2)(E), the Dutchess County evidence is relevant and admissible pursuant to FRE 402.  Plaintiffs argue that the Dutchess County evidence tends to show the existence of a group boycott, market allocation scheme, CareCore's market power, and its ability to exclude competition.  The Court agrees with Plaintiffs that evidence relevant to an anticompetitive scheme from outside the economic market may be used to demonstrate the nature and scope of the conspiracy within the market.

Accordingly, Defendants' motion to exclude is DENIED.

### XV.   ERMI DOCTOR EMAILS

Defendants seek to preclude Plaintiffs from offering into evidence the ERMI Doctor Emails as inadmissible hearsay pursuant to FRE 802.  Defendants argue that the ERMI Doctor Emails consist of hearsay statements exchanged between nonparties discussing CareCore's business practices.  Defendants also assert that the ERMI Doctor Emails cannot be admitted under the business records exception to the hearsay rule because they were not kept in the ordinary course of business and therefore do not satisfy the requirement of FRE 803(6).  Alternatively, Defendants argue that the emails, which purport to predict how CareCore would react if a new

-29-

imaging center were to ask for admission to the CareCore network near a hospital in Queens, New York, are inadmissible lay opinions under FRE 701.

Plaintiffs counter that the emails, which include one authored by a doctor who had previously served and may still serve on CareCore's Board of Managers, are not hearsay because they are statements of co-conspirators under FRE 801(d)(2)(E), or evidence of state of mind that is not subject to the hearsay rule. The conspiracy arises, Plaintiffs suggest, from the fact that one of the doctors participating in the email chain is affiliated with CareCore's Board of Managers and is suggesting to the other doctors on the emails that CareCore is unlawfully controlling the market for imaging centers and suggesting a business decision agreeable to the conspiracy. Plaintiffs argue that the emails are evidence of state of mind because they show that the doctors involved in the correspondence were aware of CareCore's market power. Plaintiffs also argue that the emails are business records because they were produced from ERMI's files.

If Plaintiffs are able to make a sufficient showing that the emails fulfill the requirements of the co-conspirator exception to the hearsay rule, FRE 801(d)(2)(E), the Court will deny Defendants' motion. See Saneaux, 365 F. Supp. 2d at 491-92. Accordingly, the Defendants' motion is preliminarily DENIED, subject to Plaintiffs fulfilling the requirements of the co-conspirator exception.

If Plaintiffs cannot show that the emails are admissible under the co-conspirator exception to the hearsay rule, the Court will

find that the emails are inadmissible hearsay and, because not kept as a regular business practice, not subject to the business records exception.  To the extent that portions of the email may be offered not for the truth of the matter asserted but as evidence of the nonparty writers' state of mind, they are not relevant, and therefore not admissible.

### XVI.   DILIGENCE RESPONSE TO GOLDMAN SACHS

Defendants move to preclude Plaintiffs from offering into evidence the Diligence Response to Goldman Sachs.  Defendants argue that the document is inadmissible hearsay under FRE 802, and cannot be offered as an admission by a party-opponent under FRE 801(d)(2) because several drafts of the document exist, and no single person is the definitive author of the document.  Defendants further contend that the document is impossible to

authenticate because of its multiple origins and, even if admissible, would be unduly prejudicial to defendants under FRE 403 because it contains unspecified non-probative and inflammatory statements.

Plaintiffs respond that the Diligence Response to Goldman Sachs bears CareCore's logo on its front page and contains the notations "CareCore National Response To Key Diligence Items" and "CareCore National Proprietary and Confidential" on every page.  Plaintiffs also point out that the information in the document they intend to introduce is the same in every version of the document and that though no CareCore executive was identified as the primary author of the document, several were familiar with it and did not

dispute it was a CareCore document.  For these reasons, Plaintiffs argue that the Diligence Response to Goldman Sachs is an admission by a party-opponent and hence not hearsay under FRE 801(d)(2)(D). Plaintiffs also argue that circumstantial evidence, such as the writing on the pages and testimony about the document from CareCore employees who are familiar with it, is sufficient to authenticate the document under FRE 901(a). The Court agrees with Plaintiffs. Hence, Defendants' motion to exclude the Diligence Response to Goldman Sachs is DENIED.


### XVII.  SPOLIATED EVIDENCE

Defendants move to exclude any documents or testimony alleging that Defendants have spoliated evidence.  Defendants assert that discovery demonstrated that CareCore did not spoliate evidence. Plaintiffs sought discovery regarding CareCore's email retention policy, but have not made any spoliation claim in this litigation.

Because Plaintiffs have not previously made any spoliation claim, despite ample opportunity to do so during or after discovery, the Court concludes that raising any such claim at trial for the first time would be untimely.  Defendants' motion to exclude evidence alleging that Defendants have spoliated evidence is thus GRANTED.

### XVIII. CERTAIN WITNESS TESTIMONY

A.    Witnesses Outside New York County

Defendants move to exclude the testimony of Dr. Victor Gaines ("Gaines"), Barbara Enny ("Enny"), Dr. Allen Rothpearl

("Rothpearl"), Dr. Sameer Rafla ("Rafla"), and Ronald Weiner
("Weiner") (collectively, "Plaintiffs' Witnesses"). Defendants
argue that Plaintiffs' Witnesses will not offer testimony relevant
to the New York County market, and therefore that their testimony
must be excluded as irrelevant pursuant to FRE 402. Further,
Defendants argue that any probative value of the testimony provided
by Plaintiffs' Witnesses will be outweighed by the risk of confusing
the jury, wasting the Court's time, and prejudicing the Defendants.
See Fed. R. Evid. 403. Defendants also assert that Plaintiffs'
Witnesses should be precluded from testifying pursuant to FRE 701,
which prohibits lay witnesses from testifying where "scientific,
technical or other specialized knowledge within the scope of Rule
702" is required. Fed. R. Evid. 702. Finally, Defendants seek to
exclude the testimony as hearsay pursuant to FRE 801.

As discussed above, the Court agrees with Plaintiffs that
evidence relevant to an anticompetitive scheme from outside the
economic market may be used to demonstrate the nature and scope of
the conspiracy within the market without prejudicing the Defendants.
To the extent that each Plaintiffs' Witness testifies based on his
or her own personal knowledge, the Court finds that the testimony
is necessarily not hearsay. See Fed. R. Evid. 801. Additionally,
as long as the Plaintiffs' Witnesses testimony is based on personal
perception, "helpful to a clear understanding of the witnesses'
testimony or the determination of a fact in issue, and [] not based
on scientific, technical or otherwise specialized knowledge within
the scope of 702," it will be admissible as lay testimony pursuant

-33-

to FRE 701. Fed. R. Evid. 701. If lay testimony, "result[s] from a reasoning familiar in every day life, it [is] permissible lay opinion testimony under Rule 701." United States v. Rigas, 490 F.3d 208, 224 (2d Cir. 2007) (internal quotation marks and citation omitted). Insofar as portions of the testimony exceed the scope of what is permissible, the Court will address specific objections on a case-by-case basis, and give the jury an appropriate limiting instruction as to the purpose for which the testimony is being admitted. Accordingly, Defendants' motion to exclude the Plaintiffs' Witnesses' testimony is DENIED.

B.   Attorney Robert Leinwand

Defendants move to exclude the testimony of Leinwand. Defendants argue that Leinwand's testimony regard Manhattan Imaging's bankruptcy filing is inadmissible pursuant to FRE 402 and 802 because it is irrelevant hearsay. Plaintiffs contend that Leinwand's testimony is highly probative evidence of CareCore's substantial market power. Plaintiffs also assert that the testimony is admissible as either based on Leinwand's personal knowledge or as lay opinion testimony pursuant to FRE 701.

Though the Court has granted the motion to preclude Plaintiffs from introducing the Bankruptcy Filing itself as evidence, the Court cannot exclude Leinwand's testimony in its entirety. Leinwand possesses personal knowledge regarding Manhattan Imaging's condition at bankruptcy, including its dependence on the insurance company networks for which CareCore provides management services. This testimony, to the extent that it is based on personal knowledge or

-34-

inferences drawn in conformance with FRE 701, is probative of CareCore's market power.  The Court finds that even though Leinwand's knowledge of Manhattan Imaging might be based on discussions with his client, it does not preclude him from having, and testifying to, his own personal knowledge on the subject.

Further, the contents of the Bankruptcy Filing may be admissible as a past recollection recorded and read into evidence if Leinwand fails to recall the value of CareCore to Manhattan Imaging and otherwise satisfies the requirements of FRE 803(5).  To be admissible as a past recollection recorded, a record must "concern[] a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, [and be] shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge accurately."  Fed. R. Evid. 803(5). Accordingly, Defendants' motion to exclude Leinwand's trial testimony is DENIED.


### XIX.  ORDER

For the reasons stated above, it is hereby

**ORDERED** that motion in limine (Docket No. 234) of Park West Radiology and Park West Realty, LLC's (collectively, Plaintiffs) to exclude the email chain between Donovan Spamer ("Spamer") to Thomas Varvaro, dated October 9, 2006, is GRANTED; and it is further

**ORDERED** that Plaintiffs' motion (Docket No. 231) to exclude

the email chain, dated November 27, 2006, is GRANTED in part and DENIED in part; and it is further

ORDERED that Plaintiffs' motion (Docket No. 238) to exclude references to the Court's ruling on Plaintiffs' motion for a preliminary injunction is GRANTED; and it is further

ORDERED that Plaintiffs' motion (Docket No. 242) to exclude references to malpractice allegations, lawsuits and other disputes involving doctors associated with Park West is GRANTED; and it is further

ORDERED that Plaintiffs' motion (filed under seal) to exclude the New York Department of Health email to Robert Shapiro is GRANTED; and it is further

ORDERED that Plaintiffs' motion (filed under seal) to exclude references to allegations of fraud by nonparties is GRANTED; and it is further

ORDERED that the motion in limine (Docket No. 223) of defendants, CareCore National LLC, et al. (collectively, "Defendants"), to exclude reports and testimony of Plaintiffs' economic expert Robert Maness is DENIED; and it is further

ORDERED that Defendants' motion (Docket No. 224) to exclude certain opinion testimony and the report of Robert Powell is GRANTED in part and DENIED in part; and it is further

ORDERED that Defendants' motion (Docket No. 235) to exclude the amended verified complaint in CareCore v. New York State

Association of Medical Imaging Providers Litigation is GRANTED; and it is further

**ORDERED** that Defendants' motion (Docket No. 245) to preclude admission of unrelated arbitration decision is GRANTED; and it is further

**ORDERED** that Defendants' motion (Docket No. 248) to preclude evidence concerning litigations against CareCore National, LLC is GRANTED; and it is further

**ORDERED** that Defendants' motion (Docket No. 251) to preclude admission of Plaintiffs' Trial Exhibit 60 is GRANTED; and it is further

**ORDERED** that Defendants' motion (Docket No. 254) to preclude admission of Plaintiffs' Trial Exhibit 39 is GRANTED; and it is further

**ORDERED** that Defendants' motion (Docket No. 260) to preclude admission of evidence related to Dutchess County is DENIED; and it is further

**ORDERED** that Defendants' motion (Docket No. 257) to preclude admission of Plaintiffs' Trial Exhibit 183 is DENIED; and it is further

**ORDERED** that Defendants' motion (Docket No. 263) to preclude admission of Plaintiffs' Trial Exhibit 204 is DENIED; and it is further

**ORDERED** that Defendants' motion (Docket No. 266) to preclude evidence alleging Defendants' spoliation of evidence is GRANTED; and

it is further

   **ORDERED** that Defendants' motion (Docket No. 269) to preclude
certain witnesses' testimony is DENIED.

**SO ORDERED.**

DATED:      New York, New York
            19 November 2009

                                    Victor Marrero
                                      U.S.D.J.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _11-19-09_

-38-